UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CERULE, LLC,

Plaintiff,

v.

STEMTECH HEALTHSCIENCES, INC. (d/b/a StemTech International, Inc.), and RAY C. CARTER, JR.,

Defendants.

Case No. 1:16-cv-00873-AA
OPINION AND ORDER

---

AIKEN, Judge:

This is a breach of contract and trademark infringement action brought by plaintiff Cerule LLC, an Oregon LLC, against Stemtech Healthsciences, Inc., a Delaware corporation operating out of Florida, and Ray Carter, Jr., the president and founder of Stemtech.

On August 11, 2016, the court issued a temporary restraining order prohibiting Stemtech from selling or marketing products associated with the StemEnhance trademark owned by Cerule. Subsequently, Stemtech moved for reconsideration, and the motion was denied. On August 23, 2016, the court heard oral argument on whether a preliminary injunction should issue.

After review of briefing and the argument and testimony presented at the hearing, Cerule's motion for preliminary injunction is granted with respect to Stemtech's use of the StemEnhance trademark in the United States. The motion is denied in all other respects.

## BACKGROUND

Cerule produces health supplements from the extracts of the blue-green algae which grow on Klamath Lake. Cerule's principal product is a health supplement called StemEnhance. StemEnhance is a registered trademark owned by Cerule, and the supplement StemEnhance accounts for approximately 70% of Cerule's business. Cerule currently does not market or sell a StemEnhance product.

In 2006, Cerule and Stemtech entered into a Supply Agreement under which Cerule agreed to produce and supply StemEnhance to Stemtech; Cerule also granted Stemtech a license to market StemEnhance. Stemtech used StemEnhance to market and sell other products, including "se2" and "se3."

Cerule alleges that Stemtech frequently fell into arrears on payments owed to Cerule under the Supply Agreement. Cerule alleges that in 2014, the parties agreed that Stemtech would make weekly payments on its arrearage without waiver of Cerule's contractual rights. Cerule alleges that in January 2016, Stemtech ceased making payments while continuing to accept shipments of StemEnhance.

In April 2016, Cerule notified Stemtech that it considered Stemtech to be in breach of the Supply Agreement, and that it would terminate the Agreement unless Stemtech cured the breach within 90 days. Stemtech allegedly replied that it would not pay Cerule the money due and owing.

In May 2016, Cerule filed this action and alleged breach of contract and declaratory judgment claims. On June 27, 2016, Cerule formally notified Stemtech that the Supply Agreement was terminated and demanded that Stemtech cease its use of the StemEnhance mark as well as other similarly confusing marks.

On August 9, 2016, Cerule filed an amended complaint and added claims of trademark infringement and defamation. On the same day, Cerule filed a motion for temporary restraining order and preliminary injunction. The court issued a temporary restraining order on August 11, 2016, and held a preliminary injunction hearing on August 23, 2016.

**DISCUSSION**

Cerule seeks a preliminary injunction ordering Stemtech to cease marking or selling any product with the StemEnhance trademark, and any product or mark that might be confusingly similar to StemEnhance, including Stemtech's "se2" and "se3" products and marks.[1] Cerule avers that StemEnhance accounts for 70% of Cerule's value, and now that the Supply Agreement has been terminated, Cerule intends to market StemEnhance and introduce a competing product into the marketplace. Cerule maintains that it will be unable to do so if Stemtech continues to market products that are confusingly similar to StemEnhance. Cerule argues that Stemtech will not be harmed by the injunction, because the Supply Agreement is terminated and Stemtech has no license to use StemEnhance or any related marks.

Stemtech contends that the motion should be denied because Cerule fails to present any evidence of irreparable harm or a likelihood of success on the merits, and the balance of hardships weighs in its favor. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (a

[1] Cerule's motion also seeks to enjoin use of the marks "StemFlow" and "StemRelease." However, Cerule's arguments focused on se2 and se3 and did not address StemFlow or StemRelease in any substance.

party seeking a preliminary injunction must show the likelihood of success on the merits and irreparable harm, and that the balance of equities and the public interest weigh in its favor).

With respect to the merits of its trademark claim, Cerule argues that Stemtech's marketing of se2 and se3 infringes the StemEnhance trademark, because the advertisements and product labels for these products include the mark "StemEnhance" and are likely to confuse a reasonably prudent customer about the origin of the product. *See Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007) (per curiam) (plaintiff alleging trademark infringement must show that it is "(1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark"). Stemtech responds that it no longer uses the StemEnhance mark on products sold in the United States, and it has removed the word "StemEnhance" from its advertising and its United States website pages.[2] Stemtech further contends that the se2 and se3 marks are not similar to the StemEnhance mark in either sight or sound and would not confuse consumers as to the source of the products.

If Stemtech is not using the StemEnhance product or mark to sell or promote its other products, Cerule faces a more difficult burden of establishing the likelihood of success on its trademark claim. As Stemtech argues, the Supply Agreement addresses only the StemEnhance mark, and the se2 and se3 marks do not appear confusingly similar to StemEnhance in sight or sound. Cerule nonetheless relies on the fact that Stemtech previously used the StemEnhance mark to market and sell se2 and se3, and that consumers will continue to think Stemtech's "se" products are connected to StemEnhance. Cerule's argument raises an interesting trademark question, one the court is not inclined to resolve on such a limited record.

[2] The court reviewed Stemtech's website pages available under the United States flag link and found no current use of the StemEnhance mark. *See* stemtech.com/US/Home.aspx (visited August 23, 2016).

Regardless, even if Cerule shows a likelihood of success on the merits, it fails to present evidence of irreparable harm that is necessary to warrant a preliminary injunction enjoining the sale or use of Stemtech's se2 and se3 products and marks.

As Stemtech emphasizes, the Ninth Circuit has rejected the presumption of irreparable harm arising from an alleged trademark infringement. *Herb Reed Enter., LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013). Rather, a plaintiff must present actual evidence of irreparable harm to enjoin the use of an allegedly confusing mark. *Id.* at 1249-50. Specifically, in *Herb Reed* the Ninth Circuit held that a district court erred by relying on "unsupported and conclusory statements" and "platitudes rather than evidence," and that a district court must make factual findings to support a finding of irreparable harm. *Id.* at 1250-51; *see also San Miguel PureFoods Co., Inc. v. Ramar Int'l Corp.*, 625 Fed. App'x 322, 327 (9th Cir. 2015) ("Evidence of infringement or likelihood of confusion alone may not give rise to a presumption of irreparable harm."); *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 Fed. App'x 390, 391 (9th Cir. 2014) (holding that "the fact that [plaintiff's] reputation *might* be harmed by the marketing of [defendant's] productions did not establish that irreparable harm to [plaintiff's] reputation is *likely*").

Here, Cerule fails to introduce sufficient evidence to support its claims of irreparable harm.[3] Cerule first argues that Stemtech's inability to satisfy a judgment poses irreparable harm

[3] During the preliminary injunction hearing, Cerule's counsel repeatedly declared that the parties had not engaged in discovery, implying that Cerule had no opportunity to obtain evidence of irreparable harm. Counsel failed to explain why the lack of discovery permits the court to alter the Ninth Circuit standard for preliminary injunctions. Moreover, Cerule did not seek expedited discovery, and it is unclear why the lack of discovery from Stemtech would have hindered Cerule's ability to present evidence of harm to its business. Finally, it is Cerule's burden to establish grounds for a preliminary injunction; if Cerule did not possess the evidence necessary to support a preliminary injunction pursuant to Ninth Circuit standards, it could have delayed filing the motion until it obtained such evidence.

to its proprietary and legal interest in the StemEnhance trademark. However, Cerule offers no evidence to support its assertion that Stemtech is or will be unable to satisfy a judgment. Cerule merely states that it has "a reason to believe that Defendants' failure to stay current on payments to Cerule was caused, in part, by Carter's insufficient capitalization of Stemtech." Doc. 12 at 9.[4]

Cerule also asserts that Stemtech's use of the StemEnhance mark is causing irreparable harm to Cerule's business, goodwill, reputation, and current or future market share. Again, Cerule presents no evidence to show irreparable harm to its goodwill, reputation, or future market value, and Cerule concedes that it has no competing product in the market. While Cerule's corporate representative testified that he was "concerned there may be confusion" in the marketplace, he failed to identify any evidence of irreparable harm.

Finally, Cerule relies on its argument that Stemtech's use of "similar" marks such as se2 and se3 is likely to confuse customers about the source of the products. However, as discussed above, the Ninth Circuit specifically rejected the argument that a showing of infringement supported a finding of irreparable harm. *Herb Reed*, 736 F.3d at 1251 ("This approach collapses the likelihood of success and irreparable harm factors.").

As for the balance of hardships, Stemtech emphasizes that se3 is one of its primary products, and that it will suffer certain financial harm if it is unable to sell this product. In comparison, Cerule does not have a competing product on the market, and any harm Cerule may suffer from Stemtech's marketing and sales of its own products is speculative at this point.

---

[4] At the preliminary injunction hearing, Cerule also provided a Memorandum Opinion from the District of Delaware denying Stemtech's motion for new trial and allowing a damages verdict of $1.6 million to stand in a copyright infringement case. While the opinion establishes that judgment was entered against Stemtech, it does not show that Stemtech would be unable to satisfy a judgment against it in this case. Moreover, it is unknown whether Stemtech is appealing the damage award, whether the parties settled for a lower amount, or whether Stemtech has assets to satisfy this or any other judgment.

In sum, absent evidence that Cerule will suffer actual, irreparable harm, the court has no basis to issue a preliminary injunction enjoining Stemtech from using the se2 and se3 marks or from selling those products.

Cerule also filed a motion to show cause why Stemtech should not be held in contempt and sanctions should not be imposed for failing to abide by the TRO. In support of its motion, Cerule attaches numerous website pages reflecting Stemtech's use of the "StemEnhance" trademark. However, the website pages are directed at consumers in countries other than the United States. Cerule provides no authority to extend this court's jurisdiction to foreign markets, and the motion is denied.

**Conclusion**

Accordingly, Cerule's Motion for Preliminary Injunction (doc. 12) is GRANTED, in part. Stemtech is enjoined from referencing StemEnhance or using the StemEnhance mark in the United States, including in its United States webpages. The motion is DENIED in all other respects. Cerule's Motion to Show Cause (doc. 20) is DENIED.

IT IS SO ORDERED.

Dated this 23 day of August, 2016.

Ann Aiken

Ann Aiken
United States District Judge